THE UNITED STATES DISTRICT COURT FOR THE SOUTERN DISTRICT OF FLORIDA

DEBORAH SHOENBERG RUBIN

        Plaintiff,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,
Natalie LaMarque  General Counsel
Bob Kaufman, Esq.
Jeremy Klatell, Esq.
Shari Gerson, Esq.

        Defendants,

Case No.

_____/

### Complaint For ERISA, Criminal Fraud and Criminal Conspiracy

**COMES NOW,** Plaintiff, Deborah Shoenberg Rubin, (hereinafter Rubin) by and through her undersigned counsel, Robert I. Rubin, Esq. who sues the defendants Life Insurance Company of North America (hereinafter NY Life) Natalie LaMarque, Bob Kaufman, Jeremy Klatell and Shari Gerson and in support of states as follows:

### Introduction

This ERISA Complaint pleads a claim for disability benefit under a breach of the Employer Retirement Income Security Act of 1974.

### The Parties

### Plaintiff

1. Plaintiff Rubin resides in Boca Raton Florida and is sui generis.

2. From 2007-2021 Rubin was employed by the National Federation of Independent Business in their Boca Raton office.

### Defendants

3. Defendant, Life Insurance Company of North America was the underwriter of the policy issued to NFIB, Rubin's Employer. (Exhibit A)
4. Natalie LaMarque is Senior Vice President and General Counsel for NY Life.
5. LaMarque and NY Life are vicariously liable for the lies and fraud committed by NY Life's in house lawyers, "Bob Kaufman" and Jeremy Klatell.
6. Robert Kaufman is an in-house lawyer at NY Life.
7. Jeremy Klatell is an in-house lawyer at NY Life.
8. Shari Gerson is a partner at Grey, Robinson, who is litigation counsel to NY Life. She has knowledge of NY Life's fraud and conspiracy and failed to act on it.

### Jurisdiction

9. This action arises under the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. Section 1132(1)(e)(f) and (g) as well as Section 1331 This action involves a federal question and claim by plaintiff for employee benefits under plans regulated and governed under ERISSA.

### Conditions Precedent

10. Rubin has complied with the ERISSA requirement that Rubin exhaust the Companies' administrative appeal review process prior to challenging the defendant's claim determination.

## Venue

11. Venue is appropriate in the Southern District of Florida pursuant to provisions of 29 U.S.C. Section 1132 (e) because a substantial part of the events that gave rise to plaintiffs' claims arose in the Southern District of Florida and because one or more of the breaches in this complaint occurred in said District.

## Facts

12. Rubin was employed by NFIB from 2007 through June 14, 2021.

13. She is a breast cancer survivor (with a diagnosis (in 2016) and treatment including lumpectomy, radiation, and tamoxifen.

14. On June 26, 2019, her Pertinent Chief Complaints to her psychiatrist, Richard Phelps, DO were:
Depression noted with crying spells, isolation, anhedonia
   *"I stopped exercising, ballroom dancing, cooking"*
also noted irritability, poor sleep with DFA, early am wakening, 5-6 hours per night. Also noted during the day fatigue/lethargy, anxiety-rumination, psychomotor agitation catastrophic thinking, chewing on cheeks, bruxism also notes palpitations S.O.B., vomiting and nausea. The pertinent psychiatric symptoms included:
"Depression, irritability, fatigue/lethargy, anhedonia, decreased appetite, poor focus/concentration, isolation, guilt, hopelessness and crying spells. The patient described anxiety with symptoms of rumination, psychomotor agitation, nail biting or picking, bruxism, SOB, palpitations, diaphoresis and picking at nails, hair…. sleep is characterized by difficulty falling asleep and early morning awakening. As a result, Dr. Phelps prescribed:
   Venlafaxine 225mg
   Abilify 5mg
   Alprazolam .5mg
   Tramadol 100mg

12. By June 8, 2021, Rubin's symptoms became so severe she had to stop working.

13. By July 13, 2021, Rubin's symptoms continued to worsen. She noted she is feeling "dark," depressed, and anxious at the same time she has three stressors: 1. Job, 2. Pandemic, 3. Young husband dx MCI, newly married s/p 6 months. The diagnosis remained the same. By July 12, 2021, Rubin's symptoms increased, she noted she "had the worst week in my life. My brother-in-law went on a hike nine days ago and went missing. They cannot find him and may have climbed a mountain and fell off. Symptoms included "not feeling well...notes lethargy, sleeping the entire time, "I've been in the same pajamas since Monday...anxiety with rumination and psychomotor agitation. Concentration, still poor attention to ADL's bathing, cleaning and not showering, notes constant fatigue/lethargy. "I just can't get out of bed" not attending to ADL's, not showering except every three days, losing weight, this is not me, I take care of everything and now I can't do the dishes."

14. By January 3, 2022, Rubin's symptoms had not improved. Her chief complaint was MDD, and GAD, notes increase anxiety, palpitations, I am officially leaving my job, it's been very stressful. She notes dizziness, palpitations, SOB, vomiting due to panic attack. She notes high degrees of rumination, psychomotor agitation, poor sleep quality with frequent wakening...I just don't want to get out of bed, poor focus and concentration, fatigues, lethargy...she notes crying spells, culmination, I am obsessed over doom and gloom, completely increased isolation, and anhedonia. I did not meet up with my friends last night, 6 of them. Anxiety with rumination and psychometer agitation, concern, still with attention to ADL's, bathing, cleaning and not showering. Notes high anxiety with rumination pending doom constantly worrying about everything also notes fatigue/lethargy, sleeping from 8pm to 10/11am with ensuring daytime fatigue, lethargy. Patient not attending to ADL's not showering, not leaving house, showering every 2-3 days.

15. The diagnosis was: major depressive disorder, recurrent, moderate, generalized anxiety disorder. As a result, Dr Phelps increased Rubin's medications.

### Procedural History

16. On December 7, 2022, New York Life denied Rubin's disability claim. (Exhibit B)

17. On January 3, 2022, Rubin appealed the denial of her disability claim. (Exhibit C)

18. Attached to the appeal was a letter from Dr. Phelps dated 01/03/22 stating she is still suffering emotionally and is unable to work. Her primary stressors causing her underlying emotions include employment stress. She will remain under our care for the foreseeable future, (Exhibit D)

19. On March 3, 2022, NY Life again denied the appeal. (Exhibit E)
20. On March 16, 2022, Rubin appealed again. (Exhibit F)
21. On March 31, 2022, NY Life denied the claim again. (Exhibit G)

### Breach of Disability Contract

22. According to the employer's policy:
    The employee is considered disabled if solely because of injury or sickness, she is
    1. Unable to perform the material duties of her job and
    2. Unable to earn 80% of her covered earnings from working in her regular job.

23. Both requirements of her disability claim have been satisfied.

24. Rubin was unable to perform the material duties of her regular job due to severe depression, anxiety, and panic attacks, specifically, due to her medical condition she was unable to sell NFIB renewal memberships

### Bad Faith and Negligence of Joseph Kenney in NY Life's Appeal Process

25. At all times herein mentioned, Joseph Kenney was an "appeals specialist" and licensed to conduct appeal reviews of disability claims by the State of Florida.

26. Kenney had a duty to act in good faith in adjudicating Rubin's disability application and three (3) subsequent appeals.

27. Kenney breached that duty by improperly denying Rubin's disability application and three (3) appeals.

28. Kenney was negligent in that he asked co-defendant Golestan the WRONG QUESTION when submitting the claim to her.

29. Specifically, Kenney asked:

> Do medical records evidence functional impairment from June 8th, 2021, to current? Are there any medically necessary activity restrictions?

30. The correct medical/legal standard is found in NY Life's policy.

> Is the employee considered disabled if, solely because of inquiry or sickness, he or she is (1) unable to perform the material duties of his or her regular job?

31. When this was pointed out to him in an email dated March 4, 2022, Kenney insisted that he was an appeals specialist and expert, and it was his job to determine her disability.

32. NY Life was also negligent in that he arranged for a purported review by Dr. Golestan, who had already prejudged the case.

33. Specifically, on March 1, 2022, Golestan spent only 20 (twenty) minutes cross examining Dr. Phelps concerning his lengthy records and report.

34. Kenney violated ERISSA and was also negligent in hiring Golestan. She has four professional addresses listed on the web. Yet, when contacted, each entity claims never to have heard of Dr. Golestan.

35. Moreover, in Dr. Golestan's report dated March 1st, 2022, she commits a HIPPA violation by referring to a patient "Schneider," who is another NY Life insured (S. Schneider) and NFIB employee.

36. Dr. Golestan confused Ms. Rubin with Ms. Schneider.

37. NY Life was grossly negligent in failing to correct the discrepancy in Golestan's report.

38. NY Life's had a business practice to deny legitimate claims in the hope that policy holders will get worn down or unable to obtain legal representation.

39. NY Life's breach of ERISSA contract bad faith claims handling, including making burdensome requests for more and more documentation. This included asking Rubin to obtain this voluminous medical records of Dr. Phelps.

40. NY Life misled Rubin's counsel by advising him to supply the record under threat that:

   (1) Failure to do so would lead to more delay, or

   (2) Failure to do so might lead to a denial of the claim.

41. NY Life's negligence included denying the claim after ignoring the insureds statements about her work demands.

42. NY Life breached the ERISSA contract and was negligent and acted in bad faith by using a biased physician, Golestan, to wrongfully deny Rubin's disability claim.

43. NY Life is vicariously liable for the bad faith/negligence and bad faith of Kenney.

44. As a direct and approximate cause of NY Life's bad faith and negligence, Rubin has been damaged.

### Bahar Golestan MD

45. As "Medical Director," Golestan owed a duty of care toward NY Life's disability policy holders to act as a reasonable prudent medical reviewer.

46. Golestan lists three (3) professional addresses on the web:

   1. 1275 W Washington St Ste 108, Tempe, AZ.

   2. 7291 N Scottsdale Rd. #1004 Paradise Valley, AZ 85253

   3. 1753 E Broadway Rd. #101-460, Tempe, AZ 85282

47. Yet, when contacted, none of these entities have heard of her.

48. Golestan's negligently conducted a twenty (20) minute cross examination of Rubin's treating physician, Dr. Richard Phelps on March 1, 2022.

49. Golestan had already prejudged the case before speaking to Phelps.

50. Golestan's report dated March 1, 2022, contains a glaring HIPPA Violation. Specifically, Golestan refers to a patient "Schneider," another NY Life insured, who Golestan confused with Rubin.

51. Golestan is unqualified to render her report dated March 1, 2022.

52. Golestan colluded with Joseph Kenney to deny Rubin's claim.

53. Golestan knew or should have known that Kenney had asked her the wrong medical question.

54. Golestan ignored Rubin's statements about her actual, everyday occupational demands.

55. Golestan's report is full of defective analysis.

56. Golestan writes:

> "We discussed (Phelps) how mental status findings do not reflect self-reported, subjective symptoms which bring into question credibility of reported symptoms."

57. Golestan wrongly asserted that Rubin is a liar and a faker.

58. Golestan states:

> "We discussed that cognitive manifestations of anxiey and depression are common and do not have the magnitude of impairment seen in major neurocognitive disorders."

59. Golestan's negligently concluded that severe anxiety and panic disorder and depression cannot lead to short term disability and prevent Rubin from doing her job effectively as an NFIB Sales Representative.

60. Golestan further writes:

> "Mental status indicators are inconsistent with marked neuro-negative symptomology or behavior disturbance. Clinical exam findings consistently do not reflect suicidal or homicidal thinking, vegetative signs, measured cognitive dysfunction or intoxication."

61. Dr. Golestan's negligently concludes that since Rubin is not a vegetable, paranoid, psychotic, suicidal, a killer, brain damaged or drunk, she cannot have a short-term disability.

62. Golestan further writes:

> "Furthermore, there was an ability to be renovating her condo in Boca as well as go to gym several times a week."

63. Golestan negligently concludes that since Rubin's husband renovated her dilapidated townhouse, she is not disabled.

64. Golestan negligently concludes that since Rubin does healthy, therapeutic, safe exercise, she is not disabled.

65. As a direct and proximate result of Golestan's negligence, Rubin has been damaged.

## Count III

### Fraud against NY Life, Natalie LaMarque, Bob Kaufman Esq,.Jeremy Klatell and Shari Gerson, Esq.

66. There are five (5) elements of fraud in the state of Florida:

67. First, Defendants must have knowledge that their statement is untrue.

68. Second, the false statement must be a material fact.

69. Third, the Plaintiff was injured as a result.

70. Fourth, there was justifiable reliance by the victim and,

71. Fifth, there was intention on the defendant's part to dupe the victim.

72. All five elements of fraud are satisfied in this case.

73. Specifically, on about March 23, 2022, Rubin's counsel received a telephone call from "Robert Kaufman" and Jeremy Klatell, at NY Life, (phone number 917-532-7826).

74. Kaufman and Klatell asked for a week extension on the ERISSA filing.

75. There were three (3) witnesses to this conversation: Attorney Rubin, his clients, I Kuka and D Kuka.

76. Attorney Rubin said no, either NY Life could pay the claim by March 25, 2022, or Rubin would file. Rubin would grant a one-week extension only if NY Life waved another review and agreed to stand by their defective review by Dr. Golestan.

77. On March 25, 2022, at 12:43 p.m. Klatell called Rubin and left a voice mail which said, in pertinent part "we have no intention to send (it) out for another doctor write up, which I know your worried about, and we will continue to look into it".

78. This was a bold-faced lie.

79. On or about April 1, 2022, Plaintiffs received another review by a Dr. Hedgren which attempted to correct the defective review by Dr. Golestan.

80. On April 2, 2022, Shari Gerson appeared for NY Life.

81. Rubin began a series of emails and phone calls to Gerson, requesting that Gerson and NY Life honor their agreement.

82. On April 11, 2022, Gerson sent Rubin an email stating that NY Life denied the agreement.

83. As a result, Rubin went to Verizon in Boca Raton and retrieved the voice mail from Klatell as above.

84. Rubin communicated this to Gerson, who stonewalled him.

85. Rubin requested to speak directly with Klatell, and this request was ignored.

86. Rubin warned Gerson that if the lies were not retracted, Rubin would file bar complaints against all involved and seek criminal charges as well.

87. These warnings were ignored by Gerson.

88. Gerson promised to call Rubin on April 11, 2022, but she too lied and later sent an email stating she was tied up in a mediation and personal plans that evening.

89. NY Life's statement that they would forgo another review to fix the defective review by Dr. Golestan was untrue, since they got another review by Dr. Hedgren.

90. The false statement was material because it was a key component of the deal Rubin made to hold off filing suit for a week to give NY Life time to evaluate this legitimate claim.

91. Plaintiff was injured as a result, because she now has to deal with an illegitimate additional review by Dr. Hedgren

92. Plaintiff justifiably relied on the lies of LaMarque, Kaufman and Klatell in granting the one-week extension.

93. There was intention by NY Life, LaMarque, Kaufman and Klatell to dupe the victim, Rubin, by lying to Rubin's counsel and then trying to illegally sneak in another review by Dr. Hedgren.

94. As a result, Rubin has been damaged.

95. Rubin requests punitive damages against all defendants.

## Count IV

## Criminal Conspiracy to Commit Fraud

96. Plaintiff repeats and realleges paragraphs 1-95 as if fully set forth herein.

97. As, detailed above, defendants committed a criminal conspiracy to commit fraud, which is itself a felony in Florida.

98. Specifically, Defendant LaMarque, Kaufman, Klatell and Gerson, pursuant to FS.774.04(3) agreed, conspired, or confederated with each other to commit the offense of fraud.

WHEREFOR plaintiff requests compensatory damage, punitive damages and attorney's fees and costs against defendants.

## Claim for Attorney's Fees

## Claim for Costs, Prejudgment and Post Judgment Interest

99. Pursuant to the Employment Retirement Act of 1974, Public Law 93-406 (ERISA) Rubin is entitled to attorney's fees and costs under section 1132 (g)(1) as long as the party seeking fees had achieved "some degree of success on the merits"

Rubin also seeks prejudgment interest, post judgment interest and costs.

**WHEREFORE**, Rubin respectfully requests that this Court enter judgment against Defendant plus interest, costs, attorney's fees, and whatever relief this court may deem just and proper.

By: /s/ Robert I. Rubin
Robert I. Rubin, Esq.
Florida Bar No. 7293
Counsel for Plaintiffs
Telephone: (561) 322-5752
E-Mail:
robertianrubin1958@gmail.com
pleadingrir@gmail.com

### CERTIFICATE OF SERVICE

I certify hereby that a true and correct copy of the foregoing has been furnished pursuant to Fla.R.Jud.Adm 2.516(b)(2), by U.S. Mail on the 12th day of April, 2022, and, pursuant to Fla.R.Jud.Adm2.516(b)(1), by Email 12th shari.gerson@gray-robinson.com, mayanne.downs@gray-robinson.com

By: /s/
Robert I. Rubin, Esq.
Florida Bar No. 7293
Counsel for Plaintiffs
561-322-5752

Robertianrubin1958@gmail.com
pleadingsrir@gmail.com